UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

US. SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,                No. 08-CV-13184-DT

vs.                                            Hon. Gerald E. Rosen

PAUL G. MERKLINGER and
ENCORE ASSOCIATED LEASING, LLC,

                Defendants,
and

BRIAN J. MERKLINGER,

                Relief Defendant.
_____/

ORDER REGARDING DEFENDANT PAUL MERKLINGER'S
MOTION TO SET ASIDE DEFAULT

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on         September 23 2009

        PRESENT:  Honorable Gerald E. Rosen
                                  Chief Judge, United States District Court

        This matter is presently before the Court on Defendant Paul G. Merklinger's Motion to Set Aside the Default entered against him by the Clerk on December 19, 2008. The SEC has responded and opposes the relief requested by Mr. Merklinger. The Court heard oral argument on May 13, 2009 and at the conclusion of the hearing, took this matter under advisement. Having reviewed and considered Defendant's motion, the

SEC's response and the Court's entire record of this matter, the Court is now prepared to rule on this matter. This Order sets forth the Court's ruling.

## FACTUAL BACKGROUND

This is an SEC civil enforcement action involving an alleged scheme to defraud investors engaged in by Paul G. Merklinger, a 62-year-old Canadian citizen and resident of Novi, Michigan, and Encore Associated Leasing LLC ("EAL"), a Michigan-based company owned and controlled by Merklinger. EAL was purportedly in the business of collecting, shredding and recycling used tires. According to the Complaint, from September 2006 through July 2007, Merklinger and EAL fraudulently raised $7.2 million from five investors through the offer and sale of securities in EAL. The EAL investments each consisted of (1) an individual limited liability company priced at $500,000, whose sole asset was to be a single "T2" tire collecting/shredding truck which EAL could repurchase for $1 after five years, and (2) a $10,000 warrant which the investor could exchange for a 1% unit in EAL after a five-year period.

The SEC alleges that the Defendants represented that $425,000 of each EAL investment would be used for the cost of the T2 shredding truck, with most or all of the remainder to be used for operating capital. They further allegedly represented that EAL would lease the T2 shredding trucks from the investors, use them to collect and shred used tires from tire and auto retailers, that each truck would generate gross revenue of $33,000 to $66,000 per month, and that EAL would pay investors $15,000 monthly

leasing fees and investment interest.  Merklinger also represented that a working prototype of the T2 shredding truck existed, that the trucks would be in operation shortly after the investments were received, and that after five years, the investors could expect investment returns up to 372% and the warrant would be worth at least $1.2 million.

According to the SEC, all of these representations were false and misleading:  the trucks cost much less than $425,000, there was no working prototype, and no reasonable basis for the revenue, income and return figures that Merklinger gave to the investors.  Further, Merklinger used more than $950,000 of investor funds for his own personal benefit including $435,000 for his purported "salary", more than $229,000 for the purchase of luxury automobiles and water craft, more than $180,000 for rental payments and extravagant landscaping and furnishings for his home, and over $98,000 to pay back taxes.  Merklinger also transferred more than $172,000 for the benefit of his 32-year-old son, Brian Merklinger, including $74,000 for the purchase of a Ford Shelby sports car.  (Brian Merklinger is a member of EAL's board of directors, and through another entity, owns a 20% interest of EAL with his brothers.  Brian is named only as a "relief defendant" in this action from whom the Commission seeks disgorgement of his ill-gotten gains.)  The SEC alleges that by their conduct, Merklinger and EAL violated the Securities and Exchange Acts and seeks not only disgorgement of their ill gotten gains but also the payment of civil penalties.

The SEC initiated this action on July 24, 2008.  None of the Defendants, however,

ever answered the SEC's Complaint and, on December 19, 2008, Defaults were entered by the Court Clerk as to Paul Merklinger, Brian Merklinger and EAL.

On December 30, 2008, Paul Merklinger filed a *pro se* Motion to Set Aside the Default. The SEC timely filed a response on January 13, 2009. The Court thereafter set Merklinger's motion for hearing on March 13, 2009. However, after the Court was contacted by an attorney, Jack Mazzara, who indicated that he and his firm were considering whether they would take on representation of Mr. Merklinger,[1] Mr. Mazzara asked that the Court adjourn the hearing on Merklinger's motion to set aside the default. The Court granted that request and re-set the matter for hearing on April 17, 2009.

However, on April 9, 2009, Mr. Mazzara called and informed the Court that he and his firm had decided not to represent Mr. Merklinger. Later that same day, an Appearance was filed by attorney Nathan Resnick . Mr. Resnick then called the Court and asked for time to familiarize himself with matter and requested another adjournment of the hearing. The Court agreed and re-set the matter for May 13, 2009.

Mr. Merklinger's principal argument for setting aside the Clerk's entry of default is that as a result of the Asset Freeze Order entered by the Court, his "life went into turmoil," and because all of his assets were frozen, he was "unable to retain legal counsel to advise him and/or to file an answer to the complaint." He also claims that due to the

---

[1] Mr. Mazzara made a "special appearance" at the December 18, 2008 hearing on the SEC's motion for a clerk's entry of default. Mr. Mazzara, however, indicated to the Court at that time that he was not representing Mr. Merklinger in this matter.

government's seizure of his company's records, he "did not have sufficient information upon which to respond to the Complaint. He further claims that he did not respond to the Complaint because he was hospitalized in July 2008 for a "serious condition" (however, his Answer to the Complaint was not due until September 29, 2008). These cumulative facts, Merklinger posits, should be deemed sufficient good cause to warrant setting aside the Clerk's entry of Default.

Federal Rule of Civil Procedure 55(c) provides that the court may set aside an entry of default "for good cause." The Sixth Circuit has adopted three factors to guide the Court in its exercise of discretion when considering whether to find good cause. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983). These three factors are whether (1) the default was willful, (2) a set-aside would prejudice the plaintiff, and (3) the alleged defense was meritorious. *Id.*

"When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief," rather than framing the issue in terms of "mistake, inadvertence, surprise, or excusable neglect." *Waifersong, Ltd., Inc., v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). (This latter approach would instead apply specifically to an effort to set aside a default judgment. *Waifersong*, 976 F.2d at 292.)

The Court finds that this first factor does not weigh in Mr. Merklinger's favor. His *pro se* motion shows that he understands the legal process and what he had to do to respond to the Complaint. The Court further notes that Mr. Merklinger has taken every

5

attempt to avoid this lawsuit -- he never once gave the Court a correct address to serve him (on his *pro se* motion, he used a P.O. Box address that was the P.O. Box of one of his Canadian attorneys who never appeared in this case) and he has repeatedly directed his lawyers to not give the Court or the government his address.

As for the second factor, however, the SEC has not demonstrated how it would be prejudiced if the Court were to allow Merklinger an opportunity to respond to the Complaint. Other than the delay in getting to the merits of the case, the SEC has not proffered any "prejudice," and "delay alone is not a sufficient basis for determining prejudice." *INVST Fin. Group, Inc. v. Chem-Nuclear Syss., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (*quoting Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).

Merklinger also claims he has a meritorious defense. Specifically, he claims that the investments of the allegedly defrauded investors do not constitute "securities" covered under the Federal securities laws. If any defense relied upon states a defense good at law, then a meritorious defense has been advanced. *United Coin Meter*, 705 F.2d at 845. Likelihood of success is not the measure. *Id*.

Considering all of these factors, the Court finds that it is in the interest of substantial justice to set aside the entry of default pursuant to Fed. R. Civ. Pro. 55(c). However, the relief the Court will afford to Mr. Merklinger will be very limited. The Court will set aside the default to allow Merklinger to file a motion under Fed. R. Civ. P. 12(b)(6) regarding his "no security" defense. Merklinger shall file his Motion to Dismiss within 30 days of the date of this Order. The Government shall respond thereto as

provided in Eastern District of Michigan Local Rule 7.1.

Accordingly,

IT IS HEREBY ORDERED that Defendant Paul G. Merklinger's Motion to Set Aside Default **[Dkt. # 24]** is GRANTED.

IT IS FURTHER ORDERED that the SEC's Motion to Strike Defendant's Supplemental Brief **[Dkt. # 32]** is DENIED.

IT IS FURTHER ORDERED that **within 30 days** of the date of this Order, Defendant Paul G. Merklinger shall file with the Court and serve upon Plaintiff his Fed. R. Civ. P. 12(b)(6) Motion to Dismiss based upon his claim that the investments of the various investors giving rise to this suit are not "securities" under the Federal securities laws.

IT IS FURTHER ORDERED that Defendant Merklinger's failure to timely file a Motion to Dismiss as provided in this Order will result in the entry of a Default Judgment against him.

SO ORDERED.

          s/Gerald E. Rosen
          Chief Judge, United States District Court

Dated:  September 23, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 23, 2009, by electronic and/or ordinary mail.

          s/Ruth Brissaud
          Case Manager